**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
Misc. Case No._____

| | |
|---|---|
| CITGO PETROLEUM CORP., <br><br> *Petitioner,* <br><br> v. <br><br> PETROLEUM LOGISTICS SERVICE USA, INC., <br><br> *Respondent.* | Related Case No.: 4:20-cv-01820 (S.D. Tex.) |

**PETITIONER CITGO PETROLEUM CORP.'S MOTION TO COMPEL PETROLEUM LOGISTICS SERVICE USA, INC.'S COMPLIANCE WITH SUBPOENA**

CITGO Petroleum Corporation ("CITGO") sued Panama-based Petroleum Logistics Service Corp. ("PLS") for fraud and Racketeer Influenced and Corrupt Organizations Act ("RICO") claims, among others, in the Southern District of Texas. CITGO sought, and the Court granted, leave to take third-party discovery on Petroleum Logistics Service USA, Inc. ("PLS USA")—a Miami-based subsidiary of PLS that likely performed at least some of the services at issue in the underlying Texas action. PLS USA has largely ignored CITGO's properly served subpoena and refused CITGO's numerous attempts to meet and confer. Accordingly, CITGO respectfully moves this Court for an Order compelling PLS USA to comply with the subpoena and to compensate CITGO for the costs and fees incurred in making this Motion.

**PROCEDURAL HISTORY**

This motion to compel PLS USA's compliance with the non-party subpoena for a deposition and document production ("the Subpoena") arises from CITGO's third-party discovery in *CITGO Petroleum Corp. v. Petroleum Logistics Service Corp. et al*, No. 4:20-cv-01820 (S.D. Tex. Oct. 13, 2021) ("the Underlying Action")—which was approved by the District Court there

(*see* Hr'g Mins., *CITGO Petrol. Corp. v. Petrol. Logistics Serv. Corp.*, No. 4:20-cv-01820 (S.D. Tex. Oct. 13, 2021), ECF No. 36).  The discovery is needed to determine the full extent of damages CITGO sustained as a result of the fraudulent and unlawful conduct of the defendants in the Underlying Action, PLS and Jose Manuel Gonzalez Testino ("Testino").

On May 26, 2020, CITGO filed the Underlying Action against PLS and Testino in the Southern District of Texas alleging fraud, breach of contract, and civil claims under RICO.  Compl., *CITGO Petrol. Corp. v. Petrol. Logistics Serv. Corp.*, No. 4:20-cv-01820 (S.D. Tex. May 26, 2020), ECF No. 1.  PLS and Testino failed to respond to the Complaint or otherwise defend the action, and, on January 22, 2021, CITGO's request for an entry of default was granted.  Clerk's Entry of Default, *CITGO Petrol. Corp. v. Petrol. Logistics Serv. Corp.*, No. 4:20-cv-01820 (S.D. Tex. Jan. 22, 2021), ECF No. 31.

On August 25, 2021, CITGO filed a Motion for Leave to Conduct Third-Party Discovery from PLS USA and other entities and individuals believed to be in possession of information necessary to support CITGO's Motion for Default Judgment (the "Discovery Motion") in the Underlying Action.  Mot. for Leave to Conduct Third-Party Disc., *CITGO Petrol. Corp. v. Petrol. Logistics Serv. Corp.*, No. 4:20-cv-01820 (S.D. Tex. Aug. 25, 2021), ECF No. 33.  In this motion, CITGO explained that PLS USA is believed to be the U.S.-based subsidiary of PLS that performed at least some of the services contemplated in the agreement at issue in the Underlying Action.  *Id.* at 5.  As such, PLS USA appears to have been controlled by Testino.  PLS USA would therefore likely have evidence relevant to the amount of damages CITGO suffered as a result of PLS and Testino's misconduct, including, for example, information on the true value of services provided and the amount the prices charged by PLS, PLS USA, and other Testino-related entities were

improperly inflated. *Id.* The Southern District of Texas Court granted the motion on October 13, 2021. Hr'g Mins., ECF No. 36.

On January 18, 2022, PLS USA was properly served with the Subpoena, which instructed PLS USA to designate a representative to appear for a deposition on February 7, 2022, and to produce relevant documents by the same date. Decl. of Robert Meyer ("Meyer Decl.") ¶¶ 10–11 & Ex. 3, attached hereto as Ex. A. Despite CITGO's numerous attempts to meet and confer regarding PLS USA's deposition and production of documents, including two scheduled and then cancelled conferences, over fifteen emails exchanged, and more than five voicemails and phone calls to counsel's assistant, counsel for PLS USA has failed to make himself available for a meet and confer. *Id.* ¶¶ 5–28 & Ex. 1, 4. Furthermore, PLS USA has not designated a person to testify on its behalf, produced any documents, raised any objections to the Subpoena, or filed a motion to quash the Subpoena. *Id.* ¶ 28 & Ex. 1, 4. Accordingly, CITGO now moves to compel PLS USA's compliance with this properly served Subpoena.

## **FACTUAL BACKGROUND**

I.  Underlying Action

PLS, a defendant in the Underlying Action, is a Panama-based company that claims to be in the business of coordinating international equipment purchases. Compl. ¶ 20, ECF No. 1. Testino, the other defendant in the Underlying Action, indirectly owned and controlled PLS, as well as a number of companies that PLS purchased goods from on behalf of CITGO during the relevant time period. *Id.* ¶¶ 53-55.

In March 2014, CITGO entered into an agreement with PLS (the "Agreement") under which PLS would provide procurement and logistics services for CITGO and its parent corporation. *Id.* ¶ 2. PLS was compensated for its services through a percentage commission based on the price of any purchases PLS made on CITGO's behalf. *See id.* ¶¶ 2, 4, 16. Upon

information and belief, PLS USA performed some of the services PLS was contracted to provide, and at times PLS directed CITGO to pay PLS USA instead of PLS. Between 2014 and 2018, CITGO paid tens of millions of dollars to PLS, PLS USA, and other Testino-affiliated entities in transactions entered into under the Agreement. *See, e.g., id.* ¶¶ 16, 31. CITGO later discovered that, beginning at least as early as 2012, Testino took part in a bribery and money laundering conspiracy through which Testino obtained lucrative contracts with CITGO for companies under his control, including the Agreement. *See id*. ¶¶ 5, 14, 34, 40.

On July 31, 2018, Testino was arrested and charged with substantive violations of and conspiracy to violate the Foreign Corrupt Practices Act ("FCPA"). *Id*. ¶ 32. On May 29, 2019, Testino pled guilty to a Criminal Information that described bribes paid to CITGO employees in exchange for securing contracts for his companies. *See id.* ¶¶ 36-37. Despite PLS's attempts to conceal its connection with Testino (including through providing CITGO with false and misleading information in response to a direct inquiry on the issue), CITGO eventually learned that Testino indirectly owned and controlled PLS. *Id.* ¶ 34. CITGO also learned that it had purchased goods and services from other Testino-affiliated entities in connection with the Agreement. *See id.* ¶ 31. The prices CITGO paid for goods purchased and services provided under the Agreement are believed to have been improperly inflated by Testino and PLS. *See id*. ¶¶ 41, 54. CITGO brought the Underlying Action to recover damages caused by this bribery scheme. *See id*. ¶¶ 75–112.

II.     Service Of The Subpoena

In accordance with the third-party discovery request granted by the Southern District of Texas following the October 13, 2021 hearing, CITGO issued a subpoena to PLS USA requiring it to produce documents responsive to eighteen enumerated document requests, and to designate a representative to appear for a deposition. Meyer Decl. ¶¶ 2, 3, 10 & Ex. 3. The documents

requested relate to (1) transactions carried out under the Agreement, (2) PLS USA's relationships with other Testino-controlled entities, (3) commissions, fees, and costs charged to CITGO by PLS USA and PLS, (4) communications or transactions between PLS USA and CITGO employees, (5) inducements or bribes offered by PLS or PLS USA to CITGO or CITGO employees, and (6) documentation of PLS USA's ownership structure.  Meyer Decl. Ex. 3.

To effectuate service, CITGO engaged a process server who, on November 8, 2021, served PLS USA with a subpoena requiring PLS USA to produce documents and have a representative appear for a deposition on December 2, 2021.  Meyer Decl. ¶ 4.  On December 1, 2021, CITGO was contacted by counsel for PLS USA, who requested that the deposition be rescheduled for a later date.  *Id*. ¶ 5 & Ex. 1.  CITGO agreed to reschedule, and counsel for PLS USA stated that he would contact CITGO the next day to discuss a date.  *Id*. & Ex. 1.  Counsel for PLS USA then failed to provide a date in response to three separate requests from CITGO, and did not respond in any way whatsoever to December 12, 2021, and December 20, 2021 emails requesting that he either provide a date, or meet and confer with CITGO regarding scheduling.  *Id*. ¶ 6 & Ex. 1.

On January 6, 2022, CITGO emailed counsel for PLS USA to inform him that CITGO had determined that when PLS USA was served the subpoena, a check for the deposition appearance fee and estimated mileage was not served.  *Id*. ¶ 7 & Ex. 1.  Counsel for CITGO asked if PLS USA would accept a check for the fees at that time to avoid any further delays.  *Id*. & Ex. 1.  Counsel for PLS USA again failed to respond; therefore, on January 18, 2022, PLS USA was properly served with the Subpoena (which contained the same document requests as the prior subpoena served on November 8) along with a check for the deposition appearance fee and estimated mileage.  *Id*. ¶¶ 7–10 & Ex. 3.  The Subpoena was personally delivered to Sergio Omana—PLS USA's registered agent and an employee who informed the process server that he was authorized

to accept service on behalf of PLS USA—at 2715 NW 115th Ave., Suite 201, Miami, FL 33172, the principal place of business PLS USA listed on its June 1, 2021 annual corporate registration form filed with the Florida Secretary of State (the "Registration Statement"). *Id*. ¶¶ 9–10 & Ex. 2, 3. The Subpoena ordered the deposition and production of documents to take place by February 7, 2022, at the office of the law firm Jones Day at 600 Brickell Ave., Miami, FL 33131, a location within 100 miles of PLS USA's office. *Id*. ¶ 11 & Ex. 3.

On January 19, 2022, CITGO emailed counsel for PLS USA to inform him that PLS USA had been served and to request a conference regarding the Subpoena. *Id*. ¶ 12 & Ex. 1. Counsel for PLS USA again did not respond. *Id*. ¶ 13 & Ex. 1. On February 2, 2022, CITGO again emailed counsel for PLS USA noting that PLS USA had failed to object to the subpoena within 14 days of service, had failed to meet and confer regarding the matters for examination (as required by FRCP 30(b)(6)), and had given no indication if PLS USA would attend the deposition. *Id*. ¶ 14 & Ex. 1. Counsel for CITGO stated that as a result CITGO intended to file a motion to compel, and would do so if counsel for PLS USA did not respond by February 7. *Id*. & Ex. 1.

On February 7 (the day when PLS USA was supposed to be deposed under the Subpoena), counsel for PLS USA replied claiming that the prior emails from counsel for CITGO had gone into his "Junk Box" and had not been read by counsel for PLS USA until that morning.[1] *Id*. ¶ 15 & Ex. 1. Counsel for PLS USA then stated his client intended to produce documents and attend a deposition, and that he would meet and confer. *Id*. However, he did not offer any dates or times

---

[1] This explanation is curious as counsel for PLS USA had previously responded to an email from CITGO's counsel that was sent to counsel for PLS USA at this same e-mail address (as well as to his assistant). Meyer Decl. Ex. 1.

for such a meet and confer, instead writing that his assistant would coordinate the date and time.[2] *Id.* As this assistant did not contact counsel for CITGO that day, counsel for CITGO emailed counsel for PLS USA on February 7, February 8, February 9, and February 14, 2022, attempting to schedule a conference regarding the Subpoena. *Id.* ¶¶ 15–22 & Ex. 1. Counsel for CITGO also called counsel for PLS USA's office on February 8, February 9, and February 14, 2022, and was directed to the assistant's voicemail, where counsel for CITGO left messages relaying the request for a meet and confer as to the Subpoena. *Id.* ¶¶ 18–22 & Ex. 1. In the February 14 communications, counsel for CITGO stated that if proposed dates for a meet and confer and PLS USA's deposition were not provided by 5:00 p.m. on February 16, 2022, CITGO would file a motion to compel. *Id.* ¶ 22 & Ex. 1.

On February 14, 2022, the assistant for counsel for PLS USA wrote back and indicated she would reply that day with proposed dates and times for a meet and confer and PLS USA's deposition. *Id.* ¶ 23 & Ex. 1. She did not do so. *Id.* The following day, the assistant for counsel for PLS USA emailed counsel for CITGO providing only dates for a proposed meet and confer, but not a proposed date for PLS USA's deposition. *Id.* ¶ 24 & Ex. 4. Following this email, counsel for PLS USA and counsel for CITGO agreed to have a teleconference on February 22. *Id.* ¶¶ 23-24. That teleconference was cancelled by counsel for PLS USA less than fifteen minutes before it was to occur (the stated reason was counsel for PLS USA had a deposition that was "running long"), and counsel for PLS USA and counsel for CITGO agreed to speak the next day. *Id.* ¶ 25 & Ex. 4. That teleconference was then cancelled less than five minutes before it was to occur, with the assistant for counsel for PLS USA stating there had been a death in the family of counsel

---

[2] This assistant had been copied on all of the prior emails sent to counsel for PLS USA. Meyer Decl. ¶¶ 6–12 & Ex. 1.

for PLS USA. *Id.* ¶ 26 & Ex. 4. Counsel for CITGO agreed to propose dates for the following week, and did so. *Id.* However, since sending those proposed dates, counsel for CITGO has been unable to reach counsel for PLS USA to arrange a meet and confer despite multiple emails and telephone calls, and despite stating that if a meet and confer did not take place by March 4, counsel for CITGO would file a motion to compel. *Id.* ¶¶ 26-27.

To date, counsel for PLS USA has not made himself available for a meet and confer nor provided a proposed date for PLS USA's deposition. *Id*. ¶ 28. PLS USA has also not designated a person to testify on its behalf, produced any documents, filed a motion to quash the Subpoena, or served any objections to the Subpoena. *Id*. ¶ 28 & Ex. 1, 4.

III.   Responsive Documents In PLS USA's Possession

PLS USA is believed to be a subsidiary of PLS used to complete at least some of the logistics services for which CITGO contracted with PLS. Mot. for Leave to Conduct Third-Party Disc. at 5, ECF No. 33. Due to PLS USA's performance of services for CITGO and its apparently close relationship to PLS, PLS USA is likely in possession of evidence relevant to the actual value of the services CITGO was provided with under the Agreement, and therefore the total amount of damages CITGO sustained as a result of the bribery scheme. *Id.* This evidence would be highly probative of the amount of damages sustained by CITGO in the Underlying Action. Furthermore, PLS USA is believed to possess evidence of bribes paid to current or former employees of CITGO, and communications documenting the process by which PLS and Testino-related entities improperly secured purchase agreements with CITGO and its parent corporation to procure goods under the Agreement. Such communications are likewise relevant to calculating the damages incurred as a result of the defendants' conspiracy. Finally, PLS USA is believed to possess

information regarding the true value of services provided and the amount the prices charged by PLS, PLS USA, and other Testino-related entities were improperly inflated.

The information in PLS USA's possession is unlikely to be available to CITGO through other means. *Id.* at 2. PLS and Testino have failed to defend the lawsuit and are in default, meaning they are not a source for the information that PLS USA is believed to possess. *Id.* at 4. Moreover, due to the illicit nature of Testino and PLS's bribery scheme, Testino, PLS, and their co-conspirators kept both the existence and amount of the bribes and the true value of the goods and services provided to CITGO secret, including by destroying evidence. Compl. at ¶¶ 66, 104, ECF No. 1.

**ARGUMENT**

I. <u>The Subpoena Was Properly Issued In The United States District Court For The Southern District Of Texas And Served On PLS USA And Thus May Be Properly Enforced By This Court</u>

    A. *The Subpoena Was Properly Issued In The Southern District Of Texas*

FRCP 45 governs non-party discovery in federal courts. Under FRCP 45(a)(2), a subpoena must issue from the court where the action is pending. Through the subpoena, a party may command a non-party to produce documents, attend a deposition, or both, at any location within 100 miles of where the non-party regularly transacts business. Fed. R. Civ. P. 45(a)(1)(C), 45(c). Here, the Subpoena was properly issued in the District Court for the Southern District of Texas. Meyer Decl. ¶¶ 2–3 & Ex. 3; *see also* Hr'g Mins., ECF No. 36. Moreover, PLS USA's principal place of business is approximately 15 miles from the place of production, 600 Brickell Ave., Miami, FL 33131—well within the 100 mile limit set forth in FRCP 45(c)(1)(A) and (c)(2)(A). Meyer Decl. ¶ 11 & Ex. 3.

B.     *The Subpoena Was Properly Served On PLS USA*

The Subpoena was then properly served on PLS USA in accordance with the requirements of FRCP 45. Meyer Decl. ¶ 10 & Ex. 3. Courts consider service on a corporation's authorized employee at the corporation's headquarters to be proper service under FRCP 4(h)(1)(B), the rule governing service on corporations such as PLS USA. *See Andujar v. All Coast Transporters, Inc.*, No. 12-62091-Civ, 2013 WL 2404059, at *4 (S.D. Fla. May 31, 2013) (holding that service on defendants was proper under FRCP 4 and Florida state law where service was made on an employee at defendants' principal place of business who identified herself as an employee authorized to accept service on behalf of defendants). CITGO, through its process server, served an employee (Sergio Omana) who is identified as PLS USA's registered agent in its most recent Registration Statement and who identified himself to the process server as being authorized to accept service on PLS USA's behalf. Meyer Decl. ¶ 10 & Ex. 2, 3. Mr. Omana was served at the principal place of business listed on PLS USA's Registration Statement, 2175 NW 115th Ave., Suite 201, Miami, FL 33172. *Id.* ¶ 9 & Ex. 2, 3. Accordingly, CITGO's service on PLS USA met the requirements of proper service under FRCP 4(h)(1)(B). *See Andujar*, 2013 WL 2404059, at *4.

However, even if service on PLS USA was not proper under FRCP 4(h)(1)(B), CITGO's service satisfied the service requirements of FRCP 45, which merely requires that service is "reasonably calculated to ensure receipt of the subpoena by the witness." *Anthony v. FDE Mktg. Grp. LLC*, No. 21-23345-MC, 2021 WL 5937683, at *5 (S.D. Fla. Dec. 16, 2021) (quoting *TracFone Wireless, Inc. v. SCS Supply Chain LLC*, 330 F.R.D. 613, 616 (S.D. Fla. 2019)). Here, the Subpoena was received by PLS USA's registered agent, who identified himself as an employee authorized to accept service on PLS USA's behalf, at PLS USA's principal place of business. Meyer Decl. ¶¶ 9–10 & Ex. 2, 3. Accordingly, CITGO's service of the Subpoena on PLS USA

was reasonably calculated to ensure PLS USA's receipt of the Subpoena, meeting the service requirements of FRCP 45. *See Anthony*, 2021 WL 5937683, at *5 (holding a subpoena properly served under FRCP 45 where the process server personally delivered and mailed the subpoena to the principal place of business listed on the witness's corporate filings—a mailbox at a FedEx/shipping store—and emailed the witness's registered agent a copy of the subpoena).

        C.      *The Subpoena May Be Properly Enforced By This Court*

The Southern District of Florida may compel PLS USA to respond to CITGO's properly issued and served Subpoena. Where a non-party fails to comply with a subpoena, the court for the district where the documents are to be produced or where the deposition is to occur may issue an order compelling discovery. Fed. R. Civ. P. 37(a)(2), (a)(3)(B)(ii), 45(d)(2)(B)(i); *see also* Fed. R. Civ. P. 45(g) (authorizing the court for the district where compliance is required to hold a non-party who fails to obey a properly issued and served subpoena in contempt). The place of production, 600 Brickell Ave., Miami, FL 33131, is within the Southern District of Florida. Meyer Decl. ¶ 11 & Ex. 3. As such, this Court may enforce the Subpoena.

II.      <u>This Court Should Grant CITGO's Motion To Compel Compliance With The Subpoena Because PLS USA Has Not Responded, Does Not Have An Adequate Excuse, And Has Waived All Objections</u>

The Court should compel PLS USA to meet its obligations under the properly issued and served Subpoena. An entity or individual subject to a subpoena to produce documents must raise any objections within 14 days. Fed. R. Civ. P. 45(d)(2)(B). "[F]ailure to serve any objections within the time period constitutes a waiver of any objections." *Whatley v. World Fuel Services Corp.*, No. 20-20993-MC, 2020 WL 2616209, at *3 (S.D. Fla. May 22, 2020); *see also Carrol v. TheStreet.com, Inc.*, No. 11-81173-Civ, 2013 WL 12383301, at *1 (S.D. Fla. Apr. 15, 2013) ("failure to serve written objections to a subpoena generally waives any objections"); *Madeline*

*L.L.C. v. Street*, No. 09-80705-MC, 2009 WL 1563526, at *1 (S.D. Fla. June 3, 2009) ("[f]ailure to timely raise objections results in a waiver").

Similarly, where a non-party who is properly served with a deposition subpoena fails to appear without adequate excuse and without seeking to quash the subpoena, the Court may enter an order compelling the non-party to appear. *See Rutsky v. Target Corp.*, No. 12-61828-CIV, 2013 WL 12009695, at *1-2 (S.D. Fla. June 17, 2013) (granting motion to compel non-party's compliance with deposition subpoena where non-party failed to comply with properly served subpoena for deposition); *Adekunle v. Care Centers of Nassau, LLC*, No. 3:12-CV-1363-JMCR, 2013 WL 12157549, at *1 (M.D. Fla. Nov. 13, 2013) (granting motion to compel non-party's compliance with deposition subpoena where non-party failed to appear for deposition and did not file motion to quash); *see also* Fed. R. Civ. P. 45(g) ("[t]he court…may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena").

As discussed above, the dates by which PLS USA was required to serve objections (February 1) or produce documents and attend a deposition (February 7) have passed. PLS USA remains unresponsive, and thus far has refused to meet and confer, set a date for the deposition, or produce any documents. It has also failed to provide any objections to the document requests, failed to designate a person to testify at the deposition, and has not filed a motion to quash.

Courts routinely grant motions to compel compliance with a subpoena where the served entity or individual waives objections to the subpoena, does not file a motion to quash the subpoena, and does not produce documents responsive to the subpoena within the allotted time or fails to appear for a deposition without an adequate excuse. *See, e.g.*, *Berkley Ins. Co. v. Suffolk Constr. Co. Inc.*, No. 19-23059-CIV, 2020 WL 10057924, at *1 (S.D. Fla. Oct. 30, 2020) ("[defendant] served [multiple non-parties] with a subpoena and they each failed to serve an

objection or response pursuant to FRCP 45. [Defendant]'s motion to compel is therefore granted"); *Noel-Wagstaffe v. Metro. Cas. Ins. Co.*, No. 17-CIV-61039, 2017 WL 6047679, at *2 (S.D. Fla. Dec. 7, 2017) (granting motion to compel where non-party document subpoena recipient failed to respond); *Kramer Sci. Lab'y Prod. Corp. v. Golf Med. Corp.*, No. 11-61610-CIV (S.D. Fla. Nov. 28, 2011), ECF No. 21 (granting party's motion to compel compliance with deposition subpoena where non-party failed to appear for deposition without adequate excuse).

PLS USA has not produced the requested documents, has not appeared for or agreed to schedule a deposition, has not designated a person to testify on its behalf, has not filed a motion to quash the Subpoena, and has waived any objections it may have had. This Court should therefore grant CITGO's Motion to Compel and require PLS USA to produce the requested information and designate a representative to appear for a deposition.

III.   The Scope Of Discovery Requested By The Subpoena Is Appropriate Under FRCP 45

As discussed above, PLS USA has waived any and all objections as to the scope of the Subpoena and the Court should therefore grant the Motion to Compel. However, even if PLS USA had not waived its objections, the discovery requested by the Subpoena is entirely appropriate under FRCP 45. Courts consider the scope of discovery available from a non-party under FRCP 45 to be "the same as the scope of discovery under Rule 26." *Marjam Supply Co. of Fla. LLC v. Pliteq, Inc.*, No. 15-CIV-24363, 2018 WL 1456614, at *4 (S.D. Fla. Mar. 23, 2018). "In other words, a party may use a Rule 45 subpoena to obtain 'discovery regarding any non-privileged matter that is relevant to any party's claim or defense,'" so long as it is proportionate to the needs of the case. *Sakhil Ctr. At Doral Condo Ass'n, Inc. v. Hanover Ins. Co.*, No. 18-21659-CIV, 2019 WL 7881626, at *1 (S.D. Fla. Mar. 21, 2019) (quoting Fed. R. Civ. P. 26(b)(1)).

As detailed in the Subpoena, CITGO is requesting production of documents and deposition testimony related to the value of services PLS and/or PLS USA performed for CITGO and its

parent corporation, PLS USA's relationship with certain other entities with ties to Testino, the amount prices charged by PLS, PLS USA, and other Testino-affiliated entities were improperly inflated, and inducements and bribe payments made by PLS and PLS USA employees to CITGO employees.  Meyer Decl. Ex. 3.  This information is relevant and highly probative of CITGO's claims in the Underlying Action.  It will help demonstrate the true value of the goods PLS purchased, provide evidence of the improper markups PLS and other Testino-affiliated vendors charged, and provide further evidence of Testino's bribery and corrupt conduct.  All of that information is significant to CITGO's calculation of damages, as CITGO already explained in its Motion for Third Party Discovery in the Underlying Action, which was granted by the District Court.

Because PLS and Testino failed to appear in the Underlying Action, CITGO cannot obtain discovery from the defendants directly.  CITGO therefore lacks sufficient ability to quantify fully the damages it suffered as a result of PLS and Testino's misconduct, and to obtain other evidence and information needed to support its Motion for Default Judgment.  Mot. for Leave to Conduct Third-Party Disc. at 2-5, ECF No. 33.  CITGO has no other way to obtain the information at issue, and, to the extent that PLS USA is in possession of such information, PLS USA should have little difficulty producing it to CITGO even had it properly objected to the scope of the Subpoena within the allotted time (which it failed to do).  *Id.* at 2, 4.

IV.  <u>PLS USA's Failure To Comply With The Subpoena Warrants An Award Of Reasonable Expenses Incurred In Making This Motion</u>

CITGO respectfully requests that this Court order PLS USA to compensate CITGO for the significant fees and costs it has incurred due to PLS USA's non-compliance with the Subpoena and its disregard for CITGO's good faith efforts to resolve any discovery disputes without the Court's assistance.  As described above, CITGO subpoenaed PLS USA for a deposition, and PLS

USA was required to designate one or more persons to testify on its behalf. Fed. R. Civ. P. 30(b)(6). Under FRCP 37(a)(3)(B)(ii), a party may move for an order "compelling . . . designation . . . if a corporation or other entity fails to make a designation under Rule 30(b)(6)." If that motion is granted, "the court *must*, after giving an opportunity to be heard, require the party *or deponent* whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion," absent substantial justification for the failure to designate. Fed. R. Civ. P. 37(a)(5) (emphasis added); *see also Sanger v. Ahn*, No. 1:19-mi-00105-MLB-LTW, 2019 WL 12291345, at *7 (N.D. Ga. Dec. 12, 2019) (granting a motion to compel a third-party witness's appearance at a deposition and his production of documents, and ordering the witness to appear for a hearing "at which time he must demonstrate . . . why the Court should not award Plaintiffs attorneys' fees" pursuant to Fed. R. Civ. P. 37(a)(5)(A)).

PLS USA has failed to designate a person who shall testify at a deposition, and, as described above, CITGO is filing this motion to compel such a designation. Moreover, PLS USA has not offered any explanation for this failure. As such, unless PLS USA or its attorney offer substantial justification for this failure, this Court should order PLS USA and its attorney to pay CITGO's reasonable expenses in bringing this motion."[3]

## CONCLUSION

For the foregoing reasons, CITGO respectfully requests that this Court compel PLS USA to produce promptly documents responsive to CITGO's Subpoena, designate a representative who

---

[3] CITGO reserves the right to move for contempt sanctions and the award of reasonable expenses under FRCP 45(g) if further enforcement of the Subpoena becomes necessary.

then shall appear for a deposition on PLS USA's behalf, and compensate CITGO for reasonable expenses, including attorneys' fees, incurred in enforcing the Subpoena.

### CERTIFICATE PURSUANT TO FRCP 37 AND LOCAL RULE 7.1(a)(3)

The undersigned certifies that counsel for Petitioner CITGO has attempted to confer with counsel for Respondent PLS USA in an effort to resolve the issues raised in this Motion but was unable to reach a resolution. Specifically, counsel for CITGO has spoken on the phone with, sent numerous emails to, and left voicemails for counsel for PLS USA and his assistant in regards to PLS USA's deposition and production of documents. Meyer Decl. ¶ 5–28 & Ex. 1, 4. Following service of the Subpoena on January 18, 2022, counsel for CITGO emailed counsel for PLS USA on January 19, 2022, to request a conference. *Id.* ¶ 12 & Ex. 1. On February 2, 2022, counsel for CITGO again requested a meet and confer and stated that if one did not take place, CITGO planned to file a motion to compel PLS USA's compliance with the Subpoena. *Id.* ¶ 14 & Ex. 1. Counsel for PLS USA responded expressing a willingness to meet and confer, but declined to provide any dates or times for such a conference. *Id.* ¶ 15 & Ex. 1. Despite multiple emails and calls by counsel for CITGO trying to arrange a conference, counsel for PLS USA has not made himself available for such a conference. *Id.* ¶¶ 16–28 & Ex. 1, 4. As such, CITGO has filed this Motion.

Dated: March 14, 2022

                Respectfully submitted,

                */s/ Amy G. Fudenberg*
                Ricardo Hugo Puente (FBN 121533)
                Amy Grace Fudenberg (FBN 1011312)
                JONES DAY
                Brickell World Plaza
                600 Brickell Avenue
                Suite 3300
                Miami, FL 33131
                Tel: (305) 714-9700
                Fax: (305) 714-9799

Email: rpuente@jonesday.com
Email: afudenberg@jonesday.com

Michael Gottlieb (admission *pro hac vice* pending)
Robert Meyer (admission *pro hac vice* pending)
Willkie Farr & Gallagher LLP
1875 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 303-1000
Fax: (202) 303-2000

*Attorneys for Plaintiff CITGO Petroleum Corporation*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document will be served on Respondent Petroleum Logistics Service USA, Inc. ("PLS USA") by mail in accordance with the service provisions of Rule 5 of the Federal Rules of Civil Procedure.

Dated: March 14, 2022					By:	*/s/ Amy G. Fudenberg*

                Amy Grace Fudenberg (FBN 1011312)
                JONES DAY
                Brickell World Plaza
                600 Brickell Avenue
                Suite 3300
                Miami, FL 33131
                Tel: (305) 714-9700
                Fax: (305) 714-9799
                Email: afudenberg@jonesday.com

                *Attorney for Plaintiff CITGO Petroleum Corporation*